WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Michael Rose, as personal representative for the of estate Bradley Rose and as personal representative on behalf of all statutory beneficiaries of Bradley Rose, deceased,

Plaintiff,

v.

Matthew Farney, et al.,

Defendants.

No. CV-22-08055-PCT-JAT

**ORDER**

Pending before the Court is Defendants' motion asking this Court to draw jurors for this case from the Prescott[1] jury wheel. Plaintiff opposes this motion and asks the Court to draw jurors from the Phoenix jury wheel.

Preliminarily, the Court notes that the District of Arizona is split into three divisions: Prescott,[2] Phoenix,[3] and Tucson. It is undisputed that the facts that underlie this case transpired in a county assigned to the Prescott Division.

There is currently no courthouse in northern Arizona designed to hold an Article III

[1] A proposed amendment to the Local Rules, if passed, will rename the Prescott Division the Flagstaff Division.

[2] The counties that make up the Prescott Division are: Apache, Coconino, Mohave, Navajo, and Yavapai. https://www.azd.uscourts.gov/clerks-office

[3] The counties that make up the Phoenix Division are: Gila, La Paz, Maricopa, Pinal, and Yuma. https://www.azd.uscourts.gov/clerks-office

court.[4] Thus, trial in this case will be in the Phoenix courthouse.

As indicated above, Defendants seek to have jurors drawn from the Prescott Division. Plaintiff seeks to have jurors drawn from the Phoenix Division. Defendants argue this Court should draw Prescott jurors because such a process would be in keeping with General Order 23-15, and cases such as *Palmer v. Web Indus., Inc.*, 2007 WL 625924, at *3 (D. Ariz. Feb. 26, 2007), which held that in Prescott Division cases, "unless both parties stipulate to a Phoenix jury pool, the jury pool will consist of persons from five northern counties…." Plaintiff argues this Court should draw Phoenix jurors because of the great inconvenience and hardship imposed on jurors residing in northern Arizona to travel to Phoenix for trial.

The Arizona District Court's jury selection plan has been discussed at length by the Ninth Circuit Court of Appeals. Specifically,

> Etsitty contends that denial of his motion to transfer his case from the Phoenix Division of the District of Arizona back to its Prescott Division, where the case had originated, deprived him of a jury venire that reflected the large percentage of Indians in the Prescott Division, and violated his rights under the Fifth and Sixth Amendments and the Jury Selection and Service Act of 1968, 28 U.S.C. section 1861, *et seq*. We review the denial of a motion to transfer a trial for abuse of discretion. *United States v. Herbert,* 698 F.2d 981 (9th Cir.), *cert. denied,* 464 U.S. 821; Fed.R.Crim.P. 18.
>
> The crimes at issue here occurred within the territory of the Prescott Division. That division contains several Indian reservations, and consequently a far higher percentage of Native Americans than the Phoenix Division. The case was calendared in Prescott initially, and transferred on the government's motion to Phoenix. The court later denied Etsitty's motion to return the case to Prescott for trial because it could not find a suitable courtroom in Prescott available at an appropriate time.
>
> We approved the maintenance of divisions in the District of Arizona in *Herbert:* "The Jury Selection and Service Act specifically provides for splitting a district into divisions and using only one division's jury wheel for petit juries...." 698 F.2d at 984, *citing* 28 U.S.C. § 1861; *see also, United States v. Cannady,* 54 F.3d 544 (9th Cir.1995) (Upholding the use of divisions in California). As we held there, the United States Constitution allows petit juries to be drawn from the jury wheel of a single division and not the entire district, if the jury wheel is a fair and reasonable representation of the population of the division. *Herbert,* 698 F.2d at 984.
>
> The Supreme Court announced a test for determining the constitutionality of jury selection under the fifth and sixth amendments in *Duren v. Missouri,*

[4] The Prescott courthouse was closed many years ago. An Article III Flagstaff courthouse is currently under construction.

439 U.S. 357 (1979):

> In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that underrepresentation is due to systematic exclusion of the group in the jury selection process.

> 439 U.S. at 364. We applied that test in deciding *Herbert,* 698 F.2d at 984, and we apply it in our analysis here.
>
> There is nothing wrong with the Phoenix Division's jury selection plan. Etsitty does not allege, and we have no evidence, that the Phoenix Division's jury wheel is not a fair representation of the division's population. Rather, Etsitty complains that the offense derives from the transfer of the case from Prescott to Phoenix as part of a systematic exclusion of Indians from juries. He argues that the creation of the Prescott Division containing a far higher concentration of Indians, combined with the jury selection plan that has separate jury wheels for each division, and the propensity of Judge McNamee to move virtually all his Prescott cases to Phoenix, together establishes systematic jury discrimination.
>
> As stated above, the creation of the Prescott Division and the use of separate divisional jury wheels are by themselves permissible. Moreover, a judge may hold a trial anywhere in a district at his or her discretion. *Herbert,* 698 F.2d at 984; Fed.R.Crim.P. 18, Committee Notes to 1966 Amendment. If, however, trials were systematically removed from the Prescott Division to the Phoenix Division, we would be confronted with a strong case for finding an exclusion of Indians in violation of *Duren.*
>
> Inappropriate transfer between divisions might in some circumstances amount to abuse of discretion even without systematic exclusion of jurors by reason of ethnicity. *See United States v. Rybachek,* 643 F. Supp. 1086 (D. Alaska 1986) (inappropriate transfer might facilitate "oppressive litigation tactics"). The district court is required to "fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses" as well as "the prompt administration of justice." Fed.R.Crim.P. 18. While the prompt administration of justice might best be served in some circumstances by putting all the trials in one central location, the convenience of the defendant and witnesses might often be better served by trial closer to where the defendant and witnesses reside.

*United States v. Etsitty*, 130 F.3d 420, 424–26 (9th Cir. 1997), *opinion amended on denial of reh'g,* 140 F.3d 1274 (9th Cir. 1998).

As the Court of Appeals recounted, this Court uses either a Prescott jury wheel or a Phoenix jury wheel to select a jury. Thus, based on which wheel is used, jurors from the other division will be excluded.

The Court of Appeals has discussed the process of using the Prescott jury wheel to select jurors for a case to be tried in the Phoenix courthouse.

> In *Etsitty,* we expressed concern with the jury selection process in trials transferred from Prescott to Phoenix. However, our concerns in *Etsitty* had to do with the different jury wheels in Phoenix (where Native Americans constitute less of the population) and Prescott (where they constitute more). The district court cured that problem [in Mr. Mitchell's trial] by using the Prescott wheel. It found there was little reason to suspect that Native Americans in the jury pool would be disparately impacted by the transfer to Phoenix based on local geography and highway access, and Mitchell points to no evidence to the contrary.

*United States v. Mitchell*, 502 F.3d 931, 950–51 (9th Cir. 2007).

Preliminarily, the Court notes that, consistent with *Palmer*, 2007 WL 625924, presumptively using a Prescott jury pool for Prescott Division cases has always been this Court's practice. Moreover, because of the concern about potential exclusion of Native Americans, and because the Court of Appeals approved the process of curing this concern by using a Prescott jury pool for a trial held in Phoenix in *Mitchell*, this Court will use a Prescott jury pool in this case. While the Court acknowledges *Etsitty* and *Mitchell* were criminal cases, the Court finds having a jury pool that represents the northern Arizona community equally persuasive here. Further, even if the Court were to use a Phoenix jury pool, Plaintiff's concerns about juror inconvenience would not be completely alleviated because five counties make up the Phoenix jury wheel, and those counties encompass hundreds of miles.

Nonetheless, acknowledging Plaintiff's concerns, the Court will use a questionnaire in advance of trial to prescreen prospective jurors for hardship. The schedule for the parties to review the questionnaire responses will be as set forth below. By using prescreening, jurors with a hardship will not have to travel to Phoenix.

The questionnaire the Court plans to send is attached. The Court includes a copy of the questionnaire for informational purposes, not to invite feedback or suggestions from the parties.

Based on the foregoing,

**IT IS ORDERED** that Defendants' motion to empanel a Prescott Division jury

(Doc. 150) is granted.

**IT IS FURTHER ORDERED** that counsel will have access[5] to the responses to the juror questionnaires on Tuesday, November 24, 2026.

**IT IS FURTHER ORDERED** setting an in-person hearing for Thursday, December 3, 2026, at 9:30 a.m. to discuss which jurors to excuse based on the questionnaires. Both parties must come to the hearing having already reviewed the questionnaire responses and already knowing which jurors they respectively have no objection to excusing.

Dated this 9th day of October, 2026.

James A. Teilborg
Senior United States District Judge

Attachment: Blank Questionnaire

[5] An email link will be sent from jury administration.

Pool Sequence Number:
Trial Date: December 8, 2026

**Length of Trial:**

You have been randomly selected for a trial that is expected to last from December 8, 2026, to January 8, 2027. Jury selection will be held on December 8, 2026. If you are selected to serve, the case will begin immediately after the jury panel is chosen. Trial will take place every business day, Monday through Friday. However, trial will be in recess from December 24, 2026, to January 1, 2027.

**Trial Schedule:**

Unless otherwise modified by the Judge, most trial days will begin at 8:30 a.m. There will be a short break every 2 hours. Most trial days will conclude in the early afternoon, but some days may conclude in the late afternoon. The Judge will advise the jury of the schedule at the end of each day for the next day.

**Location of Trial:**

Trial will be held in Phoenix, Arizona; specifically, trial will be held at the Sandra Day O'Connor United States Courthouse, 401 W. Washington Street, Phoenix, Arizona 85003.

Jurors who reside more than 60 miles from the courthouse ("traveling jurors") will be allowed to claim certain reimbursements for travel costs as follows: 1) traveling jurors will be permitted to claim reimbursement for a stay at a hotel of their choosing that offers the Government rate (up to $165 per night plus tax) for trial days; 2) traveling jurors will be permitted to claim 76 cents per mile roundtrip from their home address; and 3) traveling jurors will be permitted to claim up to $86 per day for meal reimbursements for trial days when staying in Phoenix. All travel expenses must be paid by the juror up front and will later be reimbursed. At a later time, more details about travel reimbursement will be provided to traveling jurors. This general information is being provided to help prospective traveling jurors answer the hardship question below.

**Questions:**

1. Given the above information, would the length of the trial or the proposed schedule create an undue hardship for you if selected to serve on the jury?

   Yes___ No ____

   If you answered "Yes", please explain.

____________________________________________________________

____________________________________________________________

______________________________________________________________________

______________________________________________________________________

2. Do you, or a member of your household, have any health concerns or disabilities (including COVID related concerns) that you believe might affect your duties as a juror or would make it difficult to be a fair, impartial and attentive juror?

   Yes___ No ____

   If you answered "Yes", please explain.

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

□ By checking this box, I declare under penalty of perjury that all answers are true to the best of my knowledge and belief.

______________________
DATE

**Notice**

For your safety and the safety of all others, if you develop any symptoms such as fever or chills, cough, sore throat, nasal congestion or runny nose (unless attributable to allergies), unusual muscle aches, shortness of breath or difficulty breathing, nausea or vomiting, or diarrhea **do not report for jury service**. Contact the jury administrator at: 602-322-7278.